JAMES F. McKAY III, Judge.
hThe Defendant, T.C., appeals the judgment of the Juvenile Court for the Parish of Orleans, adjudicating him delinquent of unauthorized use of a motor vehicle. For the reasons set forth below, we affirm the adjudication.
STATEMENT OF FACTS AND PROCEDURAL HISTORY:
On July 21, 2008, T.C. was charged by delinquency petition with violating one count of La. R.S. 14:68.4, unauthorized use of a motor vehicle. An adjudication hearing was held on September 14, 2009. At the conclusion of the hearing, T.C. was found to be delinquent for the crime of unauthorized use of a motor vehicle. A disposition hearing was held wherein T.C. was committed to the Department of Public Safety and Corrections for a period of six months. The trial court suspended the six-month commitment and placed T.C. on inactive probation for six months.
At the adjudication hearing, Officer Ti-wana Alexander testified that on July 4, 2008, at approximately 11:00 a.m., she observed a vehicle, with a Texas license plate, traveling in the 1000 block of Bien-ville Street. The Officer noted the brake tag and registration tag on the vehicle’s windshield had expired. She elected to stop the vehicle for traffic violations. She then approached the driver’s side of the | ¡vehicle and asked T.C. for identification. She stated that T.C. did not have identification on him, but willingly gave his name, date of birth, social security number, and address. Officer Alexander testified that T.C. told her that he got the car and the keys from his cousin, Torey C. After determining that the vehicle had been reported stolen, Officer Alexander arrested T.C.
Ms. Lucinda Lawson, the owner of the vehicle, testified that on July 4, 2008, she reported her 2001 Chevrolet Malibu, bearing Texas license plate No. T73SBR, missing. Ms. Lawson informed the investigating officer that she believed her husband’s cousin, Torey C., may have taken the car and the keys. Ms. Lawson also testified that she did not observe anyone take her vehicle. According to Ms. Lawson, she *1262 does not know T.C. and she never gave permission to Torey C. to use her vehicle.
On appeal, T.C. contends that the evidence was insufficient to support the adjudication. We disagree.
STANDARD OF REVIEW:
In order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch. C. art. 883. The standard for the State’s burden of proof in a juvenile delinquency proceeding is “no less strenuous then the standard of proof required in a criminal proceeding against an adult.” State in the Interest of G.M., (La.App. 5 Cir. 4/14/93), 617 So.2d 219, 221; State in the Interest of A.G., 630 So.2d 909, 910 (La.App. 4th Cir. 12/30/93). As a court of review, we grant great deference to the juvenile court’s factual findings, credibility determinations, and assessment of witness testimony. State ex rel. W.B., 2008-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61, writ denied, 2009-1129 (La.1/22/10), 25 So.3d 139.
|sIn evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard of review is applicable in juvenile delinquency cases. State in the Interest of T.E., 2000-1810, p. 4 (La. App. 4 Cir. 4/11/01), 787 So.2d 414, 417.
In addition, La. Const, art. V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. Therefore, as in the review of civil eases, a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. See State in the Interest of Batiste, 367 So.2d 784 (La.1979); State in the Interest of S.S., 557 So.2d 407 (La.App. 4th Cir.1990); State ex rel. T.W., 2009-0532 (La.App. 3 Cir. 10/7/09), 21 So.3d 465; State ex rel. E.D.C., 39,892 (La.App. 2 Cir. 5/11/05), 903 So.2d 571. In sum, we apply the “clearly wrong-manifest error” standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt.
LAW AND ANALYSIS:
La. R.S. 14:68.4(A) defines unauthorized use of a motor vehicle as “the intentional taking or use of a motor vehicle which belongs to another, either without the other’s consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.”
LThe Louisiana Supreme Court has expressly construed unauthorized use of a movable as “requiring a showing of mens rea or criminal intent....” State v. Bias, 400 So.2d 650, 652-53 (La.1981). This can be construed to require the existence of “fraudulent intent.” Id.
In the Interest of H.N., L.C., T.B., 97-0982 (La.App. 4 Cir. 7/8/98), 717 So.2d 666, this Court reversed delinquency findings for unauthorized use of a motor vehicle where the juvenile defendants denied knowing that the car in question was stolen when they accepted a ride. This Court noted that there was no forced entry into the vehicle, no damaged steering column, and further noted that the key was in the ignition.
In State in Interest of O.B., 559 So.2d 31 (La.App. 4th Cir.1990), this Court determined that the juveniles fled in the vehicle in question after the high speed chase, accepted a ride from an acquaintance and did not know the car was stolen until it was stopped by the police. This Court concluded that the State failed to support *1263 a finding of beyond a reasonable doubt that the defendants committed the crime of unauthorized use of a motor vehicle and reversed trial court’s judgment.
Recently, in State in the Interest of C.B., 2009-1114 (La.App. 4 Cir. 12/16/09), 28 So.3d 525, this Court reversed an adjudication of unauthorized use of a motor vehicle on insufficient evidence. There, C.B. accepted a ride in a Krispy Kreme work truck with a man he recognized from his neighborhood. The driver was wearing a Krispy Kreme shirt and indicated that he worked for the company. This Court concluded that the State produced no evidence that C.B. knew the vehicle was stolen and no evidence that C.B. had the necessary criminal intent beyond a reasonable doubt to be adjudicated delinquent of unauthorized use of a motor vehicle, as required by State v. Bias, supra. The evidence revealed that the 1 skey was in the ignition and there was no visible sign of forced entry that would have led C.B. to know that the vehicle was stolen.
Above we noted related jurisprudence that involved juvenile unauthorized use of motor vehicle. In those cases this Court has consistently considered such circumstances as indicative of a defendant’s lack of knowledge that the vehicle in question had been stolen.
In contrast to the above cases, in the present case, T.C. is the driver of the stolen vehicle, not an unwitting passenger.
The only two witnesses at trial were Officer Tiwana Alexander and Ms. Lucinda Lawson. The crux of their testimonies is stated above. Through the uncontrovert-ed testimony of both of these State witnesses, the State proved that T.C. was driving Ms. Lawson’s Chevy Malibu without her permission. T.C.’s argument that the vehicle was undamaged, a key was in the ignition and that he thought the vehicle belonged to his cousin Torey C. is of no moment in the establishment of the requisite mens rea.
When Officer Alexander stopped the vehicle with a Texas license plate and an expired registration and brake tag visible on the windshield, T.C. was unable to produce any form of identification or ownership of the vehicle. He orally provided his name, social security number and date of birth.
Ms. Lawson testified that she owned the vehicle, reported it stolen and did not know T.C. nor did she give him permission to drive her vehicle. The fact that she testified that her husband may have given the keys to Torey C. or that there was a possibility that Torey C. had taken the keys, when examining the record as a whole goes to credibility.
|fiThe trier of fact, in this case, the juvenile court, is charged with making credibility determinations. Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. State v. Brumfield, 93-2404 (La.App. 4 Cir. 6/15/94), 639 So.2d 312; State v. Garner, 621 So.2d 1203 (La.App. 4th Cir.1993). Moreover, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. State v. Jones, 537 So.2d 1244, 1249 (La.App. 4th Cir.1989); Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely -with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. Id. A trier of fact’s determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984).
In finding T.C. guilty as charged, the juvenile court clearly accepted the testimony of the two State’s witnesses and the *1264 information put forth before it. Based on the record before us, we conclude that the juvenile court, as the rational trier of fact, found after examining both the facts and law that the essential elements of the charged offense was proven beyond a reasonable doubt. We cannot conclude that this decision was manifestly erroneous or clearly wrong.
Accordingly, we affirm the judgment of the juvenile court adjudicating T.C. delinquent.
AFFIRMED.